**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

LESLIE LYLE CAMICK,

*Plaintiff,*

vs.

Case No. 17-1110-EFM-GEB

HARRY R. HOLLADAY, ESQ., et al.,

*Defendants.*

**MEMORANDUM AND ORDER**

Plaintiff Leslie Lyle Camick asserts six claims against Defendants Harry Holladay, Evelyn A. Wattley, and KaiTraxx, LLC. There are numerous motions pending in this case, but most of these motions are moot. The relevant motion is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. In this motion, Defendants seek dismissal of Plaintiff's claims on the basis that Plaintiff does not state a claim and that Plaintiff's claims are barred by the statute of limitations. Because Plaintiff's claims are barred by the statute of limitations or he does not state a claim, the Court grants Defendants' motion and denies all of the remaining motions as moot.

## I.     Factual and Procedural Background[1]

Plaintiff originally filed his Complaint on May 15, 2017, asserting four claims against three Defendants.[2] These Defendants include Harry Holladay, KiaTraxx LLC ("KaiTraxx"), and Evelyn Wattley. Wattley (a resident of Kansas) is the owner of KaiTraxx (a Louisiana limited liability corporation). Holladay is an attorney who practices law in Louisiana and Texas and is a close relative of Wattley.

Plaintiff sought to proceed in forma pauperis, and the Court granted Plaintiff's request on July 11, 2017. On that same date, the Court directed the clerk of the court to take the appropriate steps to serve Defendants. On July 25, 2017, the summons were returned executed. On August 7, 2017, counsel entered an appearance on behalf of KiaTraxx and Wattley. On that same date, these Defendants filed a Motion to Dismiss (Doc. 14).[3]

On August 21, 2017, Plaintiff filed a Motion for Default Judgment against Defendant Holladay. Obtaining a default judgment under Fed. R. Civ. P. 55 is a two-step process, and Plaintiff had not completed the first step—filing an application for clerk's entry of default. Thus, the Court construed Plaintiff's motion for default judgment as an application for clerk's entry of

---

[1] The facts are taken from Plaintiff's First Amended Complaint.

[2] Since Plaintiff filed this suit, he has filed two more cases in the District of Kansas. On November 13, 2017, Plaintiff filed suit, Case No. 17-CV-1286, against Wattley asserting claims for (1) conspiracy under 42 U.S.C. § 1985, (2) misuse of judicial process, (3) malicious prosecution, (4) defamation, (5) the "tort of prima facie," and (6) the tort of outrage. He states that the case arises out of a "wrongly filed federal criminal proceeding against Plaintiff" and initiated by Wattley following a domestic disagreement in 2011. A motion to dismiss is pending in that case.

On March 2, 2018, Plaintiff filed suit, Case No. 18-CV-1065, against Sheriff Richard Dorneker (in his individual and official capacity), the Chase County Sheriff's Office, John Ehr (in his individual capacity), and unknown officers of the Chase County Sheriff's Office. In that case, he brings claims under 42 U.S.C. § 1983 for unreasonable seizure, unreasonable detention, and violation of his due process rights. Plaintiff has not yet been granted in forma pauperis status with regard to his third case.

[3] Plaintiff filed a response (Doc. 16), and he also filed a Motion to Strike Portions of Defendants' Reply Memorandum (Doc. 21).

-3-

default. In the Court's review of the docket, it appeared that Defendant Holladay was served with process and had not timely answered. Thus, a clerk's entry of default was entered against him on August 22, 2017.

That same day, Plaintiff filed an additional Motion for Default Judgment (Doc. 25). The next day, Defendant Holladay filed a Motion to Set Aside the Clerk's Entry of Default and a Motion for Leave to Respond to the Complaint (Doc. 26). In this motion, Defendant Holladay asserts that he was not properly served with process and that good cause exists to set aside the clerk's entry of default.[4]

On August 27, 2017, Plaintiff filed a Motion to Amend Complaint. No response was filed to Plaintiff's motion, and the Court granted Plaintiff leave to file an amended complaint on December 11, 2017. Plaintiff filed his First Amended Complaint on December 12. In his 62-page Amended Complaint, he asserts six claims. These claims include: (1) violation of the Defend Trade Secrets Act ("DTSA"), (2) violation of the Kansas Uniform Trade Secrets Act ("KUTSA"), (3) tortious interference with prospective business relationship, (4) breach of fiduciary duty (against Defendant Holladay alone), (5) violation of the Racketeer Influenced Corrupt Organizations ("RICO") Act, and (6) breach of contract (against Defendant Wattley alone).

In this Amended Complaint, Plaintiff asserts that he is a telecommunications field engineer and a published inventor with contributions to the telecommunications field. He has developed several inventions. These include a cable protector, secure manhole system ("manhole security cover"), pole line hardware ("pole crab"), and a squirrel guard for aerial fiber optic and copper cables.

---

[4] Plaintiff filed a response (Doc. 28), and he also filed a Motion to Strike Defendant's motion (Doc. 27).

Defendant Wattley and Plaintiff were involved in a romantic relationship, beginning in 2005. They lived together for almost six years. In 2007, they formed a business relationship operating as KaiTraxx. Wattley was listed as the owner, allegedly so they would qualify as a women-minority owned business. Wattley was the President and CEO, and Plaintiff acted as Director of International Operations of KaiTraxx. Holladay acted as legal advisor to Wattley. Plaintiff and Wattley agreed to share equally in the profit, but Plaintiff alleges that he told Wattley that he would never assign any of his patents, trade secrets or inventions to the company.

KaiTraxx conducted annual meetings in January 2007 through 2011. At each of these meetings, Wattley recorded a statement that Plaintiff assigned his rights to his patents to KaiTraxx. Plaintiff states that no assignment was ever agreed to by him and that there is not a signed record of the assignment. Plaintiff states that he did verbally agree to assign installation rights on one of his inventions, the hazaguard cable protections apparatus. Plaintiff claims that Wattley, Holladay, and KaiTraxx were beneficiaries of Plaintiff's professional activities from January 2007 through September 2011.

In early 2010, Plaintiff constructed the manhole security cover. He made a prototype by late April 2010. Plaintiff, with Wattley present, demonstrated the prototype manhole security system in April 2010 in California to AT&T. In the summer of 2010, Wattley entered Plaintiff's information regarding the prototype (technical data and manual) into a word document. Plaintiff calls this document the "Power Life Lock Manhole Security System."

In July 2011, significant issues developed between Plaintiff and Wattley. On July 9, 2011, Plaintiff refused to allow corporate payroll funds to be used to post bail for Wattley's son. Plaintiff's and Wattley's relationship was terminated. On July 23, 2011, Wattley called New Mexico police to falsely report that Plaintiff had stolen his own personal vehicle. Plaintiff was

placed under arrest and the vehicle was impounded. On July 27 or 28, 2011, Wattley retrieved the vehicle and allegedly took, without authorization, personal telecommunications equipment, the Power Life Lock Manhole Security System document, and the prototype invention of the "pole crab." Plaintiff requested return of these items in October 2011, but Wattley allegedly refused to do so.

Plaintiff was arrested three times over a two-year period (in New Mexico, New Jersey, and Kansas) because Wattley reported that her vehicle was stolen (that was purportedly Plaintiff's own vehicle). Plaintiff also asserts that Wattley caused Plaintiff to be arrested and convicted of a felony in federal court and removed from the United States.[5] Plaintiff states that Holladay acquiesced in Wattley's unlawful actions. Plaintiff has been under court order to not communicate with Wattley since March 28, 2013.

With regard to his specific legal claims, he claims that Holladay, Wattley and KaiTraxx violated the DTSA (18 U.S.C. § 1836) and the KUTSA (K.S.A. § 60-3322). He claims that

---

[5] There have been two previous cases involving Plaintiff in this Court. First, in *United States v. Camick*, Case No. 13-CR-10042, the government brought criminal charges against Plaintiff in 2013. A published opinion from the Tenth Circuit Court of Appeals, *United States v. Camick*, 796 F.3d 1206 (10th Cir. 2015), details the proceedings in the criminal case. The government charged Plaintiff with mail fraud, wire fraud, material false statement to the U.S. Patent Office, three counts of aggravated identity theft, and one count of obstruction of justice. The obstruction of justice charge related to a civil lawsuit that Plaintiff filed in this Court against Wattley while his criminal case was proceeding and he had been ordered by the Court to avoid all contact with any witnesses (including Wattley). Plaintiff was convicted on all seven counts, but the Tenth Circuit reversed all of these convictions, with the exception of the obstruction of justice charge.

In *Camick v. Wattley, et. al*, Case No. 13-CV-2361, he brought suit against Wattley, KaiTraxx, the District Court of Cowley County, Kansas, Christopher Smith, Winfield Police Department, and Nicole Hills. He alleged under 42 U.S.C. § 1983 that the defendants (1) violated his Fourth Amendment right to be free from unreasonable search and seizure by falsely reporting a crime (Wattley's report that her car was stolen) and causing him to be wrongfully imprisoned in New Mexico, New Jersey, and Kansas, (2) a Fifth and Fourteenth Amendment due process violation due to his wrongful imprisonment, (3) a Sixth Amendment violation because his right to speedy trial was violated because his Cowley County case was pending for 20 months before it was dismissed, and (4) intentional infliction of emotional distress. This case was ultimately dismissed.

Wattley, on her own or through KaiTraxx, and with full knowledge of Holladay, acquired through unlawful means Plaintiff's trade secret information relating to the manhole security cover and the pole crab. Plaintiff also alleges that Wattley, KaiTraxx, and Holladay tortiously interfered with his prospective business relationship with AT&T regarding the installation of the manhole cover. He claims that Wattley created uncertainty with AT&T when she attempted to invoice AT&T for Plaintiff's work when Plaintiff had already told AT&T that he would cover the costs. He states that Wattley's interference caused him to lose his business expectancy.

Plaintiff brings a breach of fiduciary duty claim solely against Holladay. In this claim, he asserts that Plaintiff relied upon Holladay to provide accurate legal advice to Wattley. He claims that he suffered third party injury because Holladay breached his fiduciary duty to Wattley when Holladay did not properly advise her against unlawful and unethical conduct.

In addition, Plaintiff brings a claim for violation of the RICO Act. He claims that Defendants conspired to defraud Plaintiff of his assets by wire or mail fraud. He claims that the KaiTraxx minutes between 2007 and 2010 fraudulently state that Wattley had a claim to Plaintiff's intellectual property. Plaintiff also alleges that Wattley knowingly transported trade secrets across state lines and that Holladay acquiesced in this unlawful conduct. He also states that Wattley displayed a pattern of continuing fraudulent conduct in attempting to wrongly incriminate Plaintiff to have him removed from the country.

Finally, Plaintiff brings a breach of contract claim solely against Wattley. He claims she breached her contract with Plaintiff by wrongly claiming that he assigned patent rights to her company, KaiTraxx. Plaintiff also asserts that Wattley breached her contract with him when on November 15, 2011, Wattley quieted title of their home in her name.

Defendants have now filed a Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 42).[6] They claim that Plaintiff fails to state a claim and that his claims are barred by the statute of limitations. The Court will primarily discuss this motion. In all, however, there are nine pending motions before the Court. As will be noted below, eight of the motions are moot.

## II.     Discussion

### A.     Motions Related to Plaintiff's First Complaint (Docs. 14, 21, 25, 26, 27, 39)

Six motions in this case relate to Plaintiff's first complaint. These include (1) Defendants' Motion to Dismiss and Motion for Attorney Fees (Doc. 14), (2) Plaintiff's Motion to Strike Portions of Defendants' Reply (Doc. 21), (3) Plaintiff's Motion for Default Judgment and Motion for Hearing (Doc. 25), (4) Defendant Holladay's Motion to Set Aside Clerk's Entry of Default and Motion for Leave to Respond to the Complaint (Doc. 26), (5) Plaintiff's Motion to Strike Defendant Holladay's Motion to Set Aside (Doc. 27), and (6) Plaintiff's Motion to Strike Supplement to the Record (Doc. 39). On December 12, 2017, Plaintiff filed a First Amended Complaint. Thus, on this date, the Amended Complaint became the operative pleading in this case.[7] The clerk's entry of default and the above motions are all directed toward the first complaint, which is now a moot and inoperative pleading.[8] Thus, the clerk's entry of default must be set aside and the above motions denied as moot.[9]

---

[6] Defendant Holladay also filed an Answer to the Amended Complaint.

[7] *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) (noting that a court will look to a voluntarily amended complaint, rather than the original complaint, to determine jurisdiction in the case); *see also Franklin v. Kan. Dep't of Corrs.*, 160 F. App'x 730, 734 (10th Cir. 2005) ("An amended complaint supersedes the original complaint and renders the original complaint of no legal effect.").

[8] Two of Plaintiff's motions to strike (Docs. 21, 39) are directed toward briefing related to the first complaint.

[9] *See Marotta v. Cortez*, 2008 WL 5044496, at *1 (D. Colo. 2008) (noting that a motion for default may be denied as moot or stricken from the record because it was rendered void by the filing of an amended complaint).

**B.     Defendants' Motion to Dismiss (Doc. 42)**

   *1.     Legal Standard*

Under Rule 12(b)(6), a defendant may move for dismissal of any claim where the plaintiff has failed to state a claim upon which relief can be granted. On such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[10] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[11] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[12] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint but need not afford such a presumption to legal conclusions.[13] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[14]

Generally, the Court is constrained by the allegations in the complaint when considering a motion to dismiss. A court, however, may take facts subject to judicial notice, such as "its own files and records, as well as facts which are a matter of public record" without converting a motion

---

[10] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[12] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2).

[13] *Iqbal*, 556 U.S. at 678-79.

[14] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

to dismiss to one for summary judgment.[15] Furthermore, "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."[16]

Because Plaintiff is pro se, the Court is mindful of considerations for an unrepresented plaintiff. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," but the Court will not "assume the role of advocate for the pro se litigant."[17] To avoid dismissal, the pro se complaint "must set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action . . . [and] must allege sufficient facts to state a claim which is plausible—rather than merely conceivable—on its face."[18]

2.  *Analysis*

    a.  Count I — Violation of the DTSA

Defendants assert that Plaintiff fails to state a claim under the DTSA. The DTSA provides for a private cause of action for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."[19] Misappropriation means "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B)

---

[15] *Tal v. Hogan*, 453 F.3d 1244, 1264-65 n. 24 (10th Cir. 2006) (citations omitted). *See also Merswin v. Williams Cos., Inc.*, 364 F. App'x 438, 441 (10th Cir. 2010) (stating that "[i]t is settled that the district court can take judicial notice of its own decision and records in a prior case involving the same parties.") (citations omitted).

[16] *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005).

[17] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[18] *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008) (citations omitted).

[19] 18 U.S.C. § 1836(b)(1).

disclosure or use of a trade secret of another without express or implied consent by a person . . . ."[20] Thus, there are three avenues for liability: (1) acquisition, (2) disclosure, or (3) use.[21] The DTSA only applies to misappropriations occurring after its enactment on May 11, 2016.[22]

Defendants assert that Plaintiff fails to state a claim because he does not allege an act of misappropriation after enactment of DTSA. Plaintiff contends that his allegations of continuing possession of his trade secrets constitutes a misappropriation.

Plaintiff identifies his trade secrets as the manual for the manhole cover (Power Life Lock Manhole Security System) and the prototype of the pole-crab. The majority of Plaintiff's allegations relate to conduct or acts that occurred in 2010 or 2011. He states that the unlawful acts originated in 2007 and culminated in the violation of Plaintiff's trade secrets rights in 2011. Specifically, he alleges that Wattley removed his trade secrets from a vehicle on or about July 28, 2011, in New Mexico.

Plaintiff's allegation of the "acquisition" of trade secrets clearly occurred prior to the DTSA's enactment. Indeed, as it occurred in late July 2011, and the DTSA was enacted in May 2016, the acquisition was almost five years prior to enactment. As noted above, the DTSA only applies to misappropriations occurring after the DTSA's enactment. Thus, Plaintiff's allegation of misappropriation related to acquisition fails to state a claim under the DTSA.

---

[20] 18 U.S.C. § 1839(5)(A)-(B).

[21] *Id.*; *see also Ultradent Prods., Inc. v. Spectrum Sols. LLC*, 2018 WL 324868, at *2 (D. Utah 2018) (citing 18 U.S.C. § 1839(5)).

[22] *Ultradent Prods.,* 2018 WL 324868, at *2 (citations omitted); *see also Adams Arms, LLC v. Unified Weapon Sys., Inc.,* 2016 WL 5391394, at *6 (M.D. Fla. 2016) (noting the enactment of the DTSA on May 11, 2016, and that the DTSA only covers acts occurring on or after that date).

Plaintiff argues, however, that Wattley continues in unauthorized possession of his trade secrets, and thus he states that he has alleged a misappropriation after the DTSA's enactment. Continuing possession, however, is insufficient to state a claim.[23] Instead, there must be allegations of use or disclosure after the DTSA's enactment. As noted above, Plaintiff's specific dates, acts, and timing relate to events that occurred during the summer of 2011. Plaintiff does not allege any acts of acquisition, disclosure, or use occurring after May 11, 2016. He simply alleges "continuing possession." Even if he did allege "use," he simply asserts conclusions. The absence of well-pled factual allegations and the assertion of only legal conclusions is fatal to Plaintiff's claim. Accordingly, the Court grants Defendants' motion to dismiss this claim.

  b.  Count II — Violation of the KUTSA

Defendants assert that Plaintiff's claim under the KUTSA is barred by the statute of limitations and that equitable tolling is not applicable to save Plaintiff's claim. A claim for misappropriation under the KUTSA "must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."[24] Plaintiff alleges that Wattley took his trade secrets in July 2011 and that she refused through email to return them to him in October 2011. Using either July 2011 or October 2011 as the timeframe for which Plaintiff discovered the misappropriation, Plaintiff's suit (filed on May 15, 2017) is clearly beyond

---

[23] *See Ultradent Prods.*, 2018 WL 324868, at *3 (finding the plaintiffs' allegations were "wholly devoid of any well-pled facts" and the allegation that the defendant was currently "using or threatening to use" the plaintiffs' trade secrets was insufficient because "a mere recitation of the elements of a cause of action is insufficient to state a claim under DTSA"); *see also Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 337-38 (D. Del. 2017) (dismissing a DTSA claim when there were no allegations of acts on or after the DTSA's enactment on May 11, 2016, other than conclusory allegations of continuing use and disclosure).

[24] K.S.A. § 60-3325.

the applicable three-year statute of limitations. Plaintiff appears to concede this fact as he does not address it in his response to Defendants' motion.

Plaintiff asserts, however, that he was legally estopped from taking civil action at an earlier date and thus the doctrine of equitable tolling applies. He claims that a provisional order issued by Judge Marten of this Court on February 19, 2014, in Case No. 13-CR-10042, prohibited him from filing suit.[25] Plaintiff asserts that this order acted as a "de facto injunction" and stopped him from taking civil action against Wattley until the Court's jurisdiction over him was terminated. He contends that he was under a "legal disability" until November 13, 2016 (the date on which his term of supervised release was supposed to end), and his suit filed on May 15, 2017 (six months after his legal disability ended) is timely.[26]

Judge Marten's February 19, 2014, order was based on the government's request to bar Plaintiff from filing any other pleadings in Plaintiff's ongoing civil case (at that time)[27] and from filing any additional court actions or pleadings related to any of the defendants in that case.[28] The government also requested that the Court prohibit Plaintiff from having contact with Wattley and/or KaiTraxx and bar Plaintiff from filing any pleading in any court without legal counsel.

---

[25] *United States v. Camick*, Case No. 13-CR-10042, Doc. 115.

[26] Plaintiff does not cite to any legal authority regarding timing and a "legal disability." Presumably, he may be referring to K.S.A. § 60-515(a) which provides that if the cause of action accrues "at any time during the period the statute of limitations is running" and the person is "imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed." However, this statute also provides that "if a person imprisoned for any term has access to the court for purposes of bringing an action, such person shall not be deemed to be under legal disability." *Id.*

[27] *Camick v. Wattley, et. al*, Case No. 13-CV-2361.

[28] The government made the request pursuant to the Crime Victim's Rights Act ("CVRA").

Judge Marten *denied* the government's request. He noted that injunctive relief was to prevent future harm and that the government had not demonstrated future harm was likely to occur because the civil case was nearing its end.[29] Judge Marten did warn Plaintiff that the denial was provisional in nature and that future attempts to litigate against the defendants *may* cause the Court to grant the relief sought by the government. In addition, Judge Marten warned Plaintiff that "the institution or continued maintenance of retaliatory litigation *may* be taken into account in his sentencing." Nevertheless, the Court did *not* enter any order prohibiting or enjoining Plaintiff from filing suit.[30]

Equitable tolling applies when a person has been pursuing his rights diligently and some "extraordinary circumstance" prevented the timely filing.[31] Plaintiff has not identified any extraordinary circumstance present in this case. Thus, equitable tolling is not available to Plaintiff.[32]

---

[29] In Case No. 13-CV-2361, the Court had already granted the defendants' motion to dismiss, and it was only addressing post-judgment motions.

[30] The Court notes that two other courts have also recognized that Judge Marten's order did not enjoin Plaintiff from filing suit. On November 28, 2016, Plaintiff filed suit in the United States District Court for the District of New Jersey against six defendants (including several Kansas entities). In that suit, he brought § 1983 claims alleging that the defendants "made false reports, conducted an improper investigation, obtained an invalid arrest warrant, denied him a speedy trial, and unlawfully detained him, throughout the period of 2011 to 2013." *Camick v. Smith*, 2017 WL 2779752, at *1 (D.N.J. 2017). The court reviewed his complaint under 28 U.S.C. § 1915(e)(2)(B) and found it subject to dismissal because it was barred by the statute of limitations. *Id*. at *1-2. In that case, Plaintiff also argued that equitable tolling was applicable because he was prohibited from filing suit earlier due to an order from the District of Kansas (Judge Marten's order). *Id*. at *2. The court disagreed and found that Plaintiff's contention was contrary to the record because the District of Kansas did not enjoin Plaintiff from filing pleadings. *Id.* The Third Circuit Court of Appeals affirmed the district court's order. *Camick v. Smith*, 698 F. App'x 41, 42 (3d Cir. 2017) (noting that the district court did not err in its findings and noting that it also reviewed the District of Kansas order and although it "cautioned [Plaintiff] against engaging in retaliatory litigation, the order, in fact, denied a request to enjoin [Plaintiff] from litigating in federal court."). *Id.*

[31] *McClain v. Roberts*, 2013 WL 3970215, at *3 (Kan. Ct. App. 2013) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)).

[32] Even if Judge Marten's February 19, 2014, order could be read as prohibiting Plaintiff from filing suit, to the extent that Plaintiff argues his legal disability ended on November 13, 2016 (the end of his term of supervised release), this argument also fails. On March 23, 2016—approximately halfway through Plaintiff's term of supervised

c.      Count III — Tortious Interference with Prospective Business Relationship

Defendants assert that Plaintiff's tortious interference claim is also barred by the statute of limitations and equitable tolling is not applicable. Tortious interference claims with a prospective business advantage must be brought within two years.[33] Plaintiff alleges that he had a prospective business relationship with AT&T regarding the use of some of Plaintiff's inventions. He states that he first spoke to AT&T in January 2010. Plaintiff contends that Wattley interfered with this relationship by causing KaiTraxx to issue an invoice to AT&T regarding work Plaintiff did in 2010. According to Plaintiff, this invoice and the demand for payment resulted in Plaintiff losing the prospective business opportunity. Again, Plaintiff filed suit on May 15, 2017. These allegations do not fall within the two-year statute of limitations and thus are time-barred.[34]

---

release—Plaintiff was removed from the United States to Canada. As will be explained below, the Tenth Circuit has already addressed this Court's authority over Plaintiff at the time of his removal.

In 2016, Plaintiff filed a motion under 28 U.S.C. § 2255 in this Court collaterally attacking the validity of his obstruction of justice conviction (in his underlying criminal case, Case No. 13-CR-10042). Judge Marten of this Court denied Plaintiff's motion, and Plaintiff appealed this denial to the Tenth Circuit. In the Tenth Circuit's decision, it stated that the district court lacked jurisdiction to hear Plaintiff's § 2255 motion. Doc. 192 in Case No. 13-CR-10042; *United States v. Camick*, No. 17-3006 (10th Cir. filed May 22, 2017). It noted that Plaintiff was deported and there was no evidence that he was under supervision following his removal to Canada. *Camick*, No.17-3006, slip op. at 5. Indeed, the Tenth Circuit noted that "[w]hile outside the United States, [Plaintiff] has no obligation to report to a probation officer and is not under the supervision or control of the United States Probation Office." *Id.* (citation omitted). Accordingly, the Court found that Plaintiff could not establish subject matter jurisdiction for purposes of his § 2255 motion. *Id.*

Here, Plaintiff's removal from the United States on March 23, 2016, eliminated this Court's authority to enforce the remaining term of his supervised release. Thus, Plaintiff's alleged "legal disability" (the prohibition from filing suit) ended on that date and not on November 13, 2016. The one-year grace period in K.S.A. § 60-515(a) allowing an individual to file suit one year after the legal disability ends would therefore expire on March 23, 2017. Plaintiff filed suit approximately two months later on May 15, 2017. Accordingly, even if Plaintiff was under a legal disability (which he was not), he did not timely file suit within one year of when the legal disability was removed.

[33] K.S.A. § 60-513(a)(4).

[34] As noted above, equitable tolling on the basis of a legal disability is unavailable because Plaintiff was not enjoined from filing suit. Furthermore, Judge Marten's order was entered *after* the two-year statute of limitations had already expired.

    d.  Count IV — Breach of Fiduciary Duty against Holladay

Defendant Holladay asserts that Plaintiff's claim against him for breach of fiduciary duty fails because it is time-barred. A breach of fiduciary duty claim must be brought within two years.[35] There are no allegations of acts occurring within two years of Plaintiff filing suit on May 15, 2017. Plaintiff does not address Defendant Holladay's statute of limitations argument and appears to concede that his claim is time-barred.

Defendant also asserts that Plaintiff does not state a claim because Plaintiff is not a third-party beneficiary of Holladay's fiduciary duty to Wattley. "[T]he essential elements of a breach of fiduciary duty claim are duty, breach, causation, and damages."[36] Plaintiff does not allege that Holladay owed Plaintiff a fiduciary duty or that Holladay breached that duty.[37] Thus, the Court dismisses Plaintiff's breach of fiduciary duty claim.

    e.  Count V — Violation of RICO

Plaintiff asserts a claim against all Defendants for a RICO violation based on their alleged conspiracy to commit wire or mail fraud or theft of trade secrets. Defendants argue that Plaintiff's claim is time-barred. "The statute of limitations for civil RICO claims is four years from either the discovery of the injury or the date the injury occurred."[38]

---

[35] K.S.A. § 60-513(a)(4).

[36] *Osage Capital, LLC v. Bentley Inves. of Nev. III, LLC*, 2014 WL 902189, at *7 (Kan. App. Ct. 2014) (unpublished).

[37] Plaintiff appears to allege that Holladay owed a fiduciary duty to Wattley and that Plaintiff was damaged when Holladay breached that duty.

[38] *Crowe v. Servin*, 2018 WL 555446, at *1 (10th Cir. 2018) (citing *Dummar v. Lummis*, 543 F.3d 614, 621 (10th Cir. 2008)).

Plaintiff claims that Wattley knowingly and willfully transported trade secrets across state lines in late July 2011 and that he noticed these items missing on July 29, 2011. He also alleges that in October 2011 he requested the return of these items, but she refused to return them. Plaintiff also contends that Wattley and Holladay fraudulently entered false claims to his intellectual property in KaiTraxx's meeting minutes between 2007 and 2010. Plaintiff claims that the nature of the conspiracy was revealed to Plaintiff on January 28, 29, or 30, 2014.

Under either the injury-occurrence or the injury-discovery rule, Plaintiff's claims are time-barred. The injury occurred in July 2011 when Wattley allegedly took Plaintiff's trade secrets across state lines or when false statements were entered into the minutes between 2007 and 2010. Under the injury-discovery rule, Plaintiff's claim accrued when he knew or *should have known* of the injury.[39] The injury-discovery rule requires consideration of when the plaintiff had "inquiry notice."[40] "[A] plaintiff is on inquiry notice whenever circumstances exist that would lead a reasonable [plaintiff] of ordinary intelligence, through the exercise of reasonable due diligence, to discover his or her injury."[41] In this case, Plaintiff alleges that Wattley took his trade secrets in July 2011, and he also specifically alleges that he knew of this fact (*knew of the injury*) in late July 2011. Plaintiff even alleges that he requested the return of the "trade secrets" in October 2011. As to the meeting minutes, they were entered between 2007 and 2010. Plaintiff *should have known of that injury* no later than 2010.

---

[39] *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1234 (10th Cir. 2006) (citing *Rotella v. Wood*, 528 U.S. 549, 553 & 554 n. 2 (2000)).

[40] *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1280 (10th Cir. 2014).

[41] *Id.* (quotation marks and citation omitted) (alterations in original).

Plaintiff argues, however, that he discovered the "nature of the conspiracy" (which apparently means that he became aware of all parties allegedly involved) in late January 2014, and that he could not assert a cause of action prior to the discovery of all parties to be named. Plaintiff's knowledge of all the parties involved is not the relevant inquiry. "[T]o bring a civil RICO claim, the plaintiff need only have discovered the *injury*, not the other elements of the RICO claim."[42] Specifically, "a RICO victim need not have actual knowledge of exactly who committed the RICO predicate act resulting in the injury for a civil RICO claim to accrue."[43] The appropriate inquiry is when the plaintiff knew or should have known of the injury.

Here, Plaintiff's factual allegations demonstrate that he either knew or should have known of the injury no later than 2010 with regard to the meeting minutes and October 2011 with regard to his trade secrets. His RICO claim filed on May 15, 2017 is barred by the four-year statute of limitations. Thus, the Court dismisses this claim.

### f.   Count VI — Breach of Contract against Wattley

Defendant Wattley states that Plaintiff's breach of contract claim is barred by the statute of limitations. Written breach of contract claims are governed by a five-year statute of limitations,[44] while oral breach of contract claims are governed by a three-year statute of limitations.[45] Although it is unclear whether Plaintiff alleges a breach of a written or oral contract, all of Plaintiff's allegations relate to conduct occurring between 2007 and 2011. Plaintiff asserts that Wattley

---

[42] *Id*. at 1278.

[43] *Id.*

[44] K.S.A. § 60-511(1).

[45] K.S.A. § 60-512(1).

breached a contract as to their jointly owned home when she filed for quiet title on or about November 15, 2011, and it was granted on December 10, 2011. He also states that Wattley breached her oral and written contract with him in 2007, 2008, 2009, and 2010 by failing to share after-tax income. Because this conduct occurred more than three and five years before Plaintiff filed suit, his breach of contract claim is barred by the statute of limitations.

### C.    Collateral Review Motion and Fed. R. Civ. P. 60(b) Motion (Docs. 36, 44)

Two other motions filed by Plaintiff are also pending before the Court. The first motion seeks collateral review of the physical removal of Plaintiff from the United States by Kansas Immigration Agents (Doc. 36). In his motion, he states that his removal to Canada was unlawful under federal statute and therefore invalidates his bar to re-entry to the United States. He also confusingly states that he is not asking for a review of any immigration orders but instead seeks relief from the unlawful execution of the voluntary departure order. The Court notes that Plaintiff currently has an appeal before the Eighth Circuit Court of Appeals relating to the validity of his removal from the United States to Canada.

Plaintiff's removal from the United States is not an issue for this Court. Plaintiff appears to bring the issue up because Defendants assert in their Motion to Dismiss that Plaintiff's claims should be dismissed because he cannot attend trial in the United States. Defendants make that argument because Plaintiff was removed from the United States on March 23, 2016, and is barred from returning for 10 years. Notwithstanding that the Court does not appear to have jurisdiction to determine the validity of Plaintiff's removal from the United States, the Court is dismissing this case on other grounds and Plaintiff's presence at trial is irrelevant. Thus, Plaintiff's motion for collateral review is denied as moot.

Subsequent to the filing of Defendants' Motion to Dismiss, Plaintiff also filed a Motion to Vacate Judgment under Fed. R. Civ. P. 60(b)(4) (Doc. 44).  This motion apparently seeks to vacate a judgment of the New Jersey District Court entered on June 26, 2017, in which that court dismissed Plaintiff's § 1983 claim against multiple individuals (an officer of the Winfield police department, the district attorney and assistant district attorney of Cowley County, Kansas) and several governmental entities as being time-barred by the statute of limitations.[46]  Again, notwithstanding that the Court does not have jurisdiction to consider and vacate another court's order, because the Court has determined that Plaintiff's suit is without merit, this motion is moot. Thus, the Court denies Plaintiff's motion.

**IT IS THEREFORE ORDERED** that the Clerk's Entry of Default (Doc. 23) is **SET ASIDE**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 42) is **GRANTED**.

**IT IS FURTHER ORDERED** that (1) Defendants' Motion to Dismiss and Motion for Attorney Fees **(Doc. 14)**, (2) Plaintiff's Motion to Strike Portions of Defendants' Reply **(Doc. 21)**, (3) Plaintiff's Motion for Default Judgment and Motion for Hearing **(Doc. 25)**, (4) Defendant Holladay's Motion to Set Aside Clerk's Entry of Default and Motion for Leave to Respond to the Complaint **(Doc. 26)**, (5) Plaintiff's Motion to Strike Defendant Holladay's Motion to Set Aside **(Doc. 27)**, (6) Plaintiff's Motion for Collateral Review of Removal Action by Kansas U.S.I.C.E. Agents and Motion for Leave to File a Brief in Support **(Doc. 36)**, (7) Plaintiff's Motion to Strike

---

[46] This order has already been affirmed by the Third Circuit Court of Appeals.  *See Camick* 698 F. App'x at 42.

Supplement to the Record **(Doc. 39)**, and (8) Plaintiff's Motion to Vacate Judgment under Fed. R. Civ. P. 60(b)(4) **(Doc. 44)** are **DENIED AS MOOT**.

    **IT IS SO ORDERED**.

Dated this 27th day of March, 2018.

*[signature]*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE